IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|   |   |
|---|---|
| AUGUSTINE UKAEGBU, | * |
| Plaintiffs, | * |
| v. | Case No.: PWG-16-3415 |
| SELECT PORTFOLIO SERVICING, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Augustine Ukaegbu filed suit against Defendants Select Portfolio Servicing, Inc. ("SPS") and Wells Fargo Bank, N.A., Inc. ("Wells Fargo") with regard to their handling of the Note and Deed of Trust encumbering his real property at 13114 Shinnecock Drive, Silver Spring, Maryland.[1] Defendants move to dismiss, arguing that Ukaegbu fails to state a claim against them. ECF No. 12.[2] Because Plaintiff lacks standing to challenge the Assignment of Deed of Trust to Wells Fargo and the exhibits establish that Wells Fargo was the holder of the Note, the

---

[1] Plaintiff has filed a complaint, amended complaint, and second amended complaint. ECF Nos. 1, 5, 9. Because the amended pleadings incorporate the earlier pleadings, I refer to them collectively as Plaintiff's "Complaint." I cite to his original complaint as "Compl.," his amended complaint as "Am. Compl.," and his second amended complaint as "Second Am. Compl."

[2] The parties fully briefed the motion. ECF Nos. 12-1, 14, 15. A hearing is not necessary. *See* Loc. R. 105.6.

For purposes of considering whether Plaintiff has stated a claim in his Complaint, I accept the facts that Plaintiff alleged in his pleadings as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Ukaegbu also attached various documents to his Complaint, which are a part of his pleading for all purposes. *See* Fed. R. Civ. P. 10(c). To the extent that Plaintiff does not dispute the contents of those documents, where they conflict with his description of them, the exhibits prevail. See *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016); *Fayetteville Investors v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991).

majority of Ukaegbu's claims, based on his belief that Wells Fargo was not the holder of the Note or assigned the Deed of Trust, fail. And, his remaining claims are time-barred. Accordingly, I will grant Defendants' motion and dismiss Ukaegbu's Complaint in its entirety.

## **Background**

Ukaegbu purchased 13114 Shinnecock Drive, Silver Spring, Maryland (the "Property") and later refinanced his mortgage loan with Mortgage Lenders Network USA, Inc. ("MLN" or the "Lender"), executing a Note and Deed of Trust for $799,999 on September 14, 2006. Compl. ¶¶ 1–2; Deed of Tr. 1–2, Compl. Ex. A, ECF No. 1-2; Note, Compl. Ex. B, ECF No. 1-3, at 25–28. The Deed of Trust lists Mitchell L. Heffernan as Trustee and Mortgage Electronic Registration Systems, Inc. ("MERS"), "a separate corporation that [was] acting solely as a nominee for Lender and Lender's successors and assigns," as the beneficiary.[3] Deed of Tr. 2. It provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower," *id.* ¶ 20, at 11, and it states that its "covenants and agreements . . . shall . . . benefit the successors and assigns of Lender," *id.* ¶ 13, at 10. Additionally, "[i]f there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the

---

[3] This is a typical practice. MERS is a corporation established in the mid-1990s to eliminate the need to record assignments and related documents in county property recorder's offices. . . . MERS created a computer database that tracks servicing and ownership rights of mortgage loans. Mortgage lenders often list MERS as the "mortgagee of record" on the paper mortgage rather than the lender. MERS remains the mortgagee for the life of a mortgage loan even after the original lender or a subsequent assignee transfers the loan.

*Danso v. Ocwen Loan Servicing, LLC*, No. PX 16-1396, 2016 WL 4437653, at *1 (D. Md. Aug. 23, 2016) (citing Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1361–62 (2010)). "Once a loan is assigned to MERS, the public land title records no longer reveal who (or what) actually owns a lien on the property in question." Peterson, *Foreclosure*, 78 U. Cin. L. Rev. at 1371.

address to which payments should be made and any other information RESPA requests in connection with a notice of transfer of servicing." *Id.* ¶ 20, at 11–12. The Deed of Trust also provides:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

*Id.* ¶ 24, at 13.

MLN indorsed the Adjustable Rate Balloon Note ("Note") in blank. Note 4, ECF No. 1-3, at 28. The Note states that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'NoteHolder.'" *Id.* at 1, ECF No. 1-3 at 25. Ukaegbu later filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland, and BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP ("BAC") signed a Proof of Claim on December 28, 2010 and filed it on January 20, 2011, asserting that it was "loan servicer[] for Wells Fargo Bank, N.A. as trustee for the Holders of Sasco 2007-MLN1 who is the holder of the note." Proof of Claim, Compl. Ex. B, ECF No. 1-3, at 2, 4. Its Proof of Claim included a True and Certified Copy of the Note indorsed in blank. Note, ECF No. 1-3 at 25–28.

And, on December 28, 2012, MERS, acting as nominee for MLN, executed an Assignment of Deed of Trust, in which it "assign[ed] and transfer[red] to **WELLS FARGO . . . AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE SASCO MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-MLN1** its successors and assigns . . . its right, title, and interest to [the] Deed of Trust." Assignment, Compl. Ex. D, ECF No. 1-5. The Assignment of Deed of Trust was recorded in the Land Records Office of Prince George's

3

County on February 20, 2013. *Id.* The Land Records also include an Appointment of Substitute Trustees, dated January 15, 2010 and filed January 21, 2010, which refers to Wells Fargo as "Trustee For The Holders Of Sasco 2007-Mln1" and, more specifically, "the holder, or authorized agent of the holder of the note secured by [the] Deed of Trust." *See* Appt. of Sub. Trs. 1, Compl. Ex. C, ECF No. 1-4. It is unclear when MERS transferred MLN's rights in the Deed of Trust to Wells Fargo, given that the Assignment was not executed until December 28, 2012, but as of January 15, 2010, Wells Fargo already was acting as the holder. At some point, however, the Note was sold and combined with other promissory notes secured by residential real property as a residential mortgage-backed securitization trust, SASCO 2007-MLN1.[4]

Yet, according to Ukaegbu, Wells Fargo could not have been a proper holder of the Note in its capacity as the trustee for SASCO 2007-MLN1, because MLN had not created SASCO 2007-MLN1 when it filed a bankruptcy petition under Chapter 11 of the United States Code on February 5, 2007, such that the mortgages amassed in SASCO 2007-MLN1 were the property of MLN's estate and not its to sell. *See id.* ¶¶ 5, 13–15, 17–18. Ukaegbu alleges that, at the time MERS executed the Assignment of Deed of Trust as nominee for MLN in December 2012, "MLN no longer existed," as it had "been long since liquidated and closed after its completed chapter 11 years before this assignment took place." *Id.* ¶¶ 12 & n.3.

---

[4] This process is called "securitization." *Danso*, 2016 WL 4437653, at *2. It

> starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. The investment bank bundles together the multitude of mortgages it purchased into a "special purpose vehicle," usually in the form of a trust, and sells the income rights to other investors. A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors.

*Id.* (quoting *Deutsche Bank Nat. Trust Co. v. Brock*, 63 A.3d 40, 42 (Md. 2013)).

Although he disputes its ownership, Ukaegbu concedes that he defaulted on the loan. *Id.* ¶ 27. After he defaulted, SPS, acting as servicer of the loan on behalf of Wells Fargo, attempted to collect payments and arrearages and threatened foreclosure. *Id.* ¶¶ 26–27. In response, Plaintiff filed this suit, claiming that "SPS as servicer for Wells Fargo, had no right to collect the debt in its behalf" because

> Wells Fargo as trustee for SASCO, is not the owner or holder of Plaintiffs Note for any and all of the forgoing and following reasons:
>
> (1) there is no record of any assignment or transfer of possession of Plaintiff's Note to Wells Fargo [or SASCO 2007-MLN1 or BAC];
>
> (2) BAC Home Loans, under penalty of perjury, swore to be the owner and holder of the Note during the same times during which Wells Fargo claimed to be the owner/holder;[5]
>
> (3) to the extent an assignment to Wells Fargo in behalf of the SASCO Trust might otherwise have been possible, it would necessarily have been void having occurred while MLN was in chapter 11 bankruptcy or thereafter when MLN would have had nothing to transfer after its liquidation.

*Id.* ¶¶ 13–15, 17–18. On that basis, he claims violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.*; the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13- 101 *et seq.*; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and he seeks a declaratory judgment and to quiet title to the property. He also claims that Wells Fargo is liable for fraudulent concealment, negligence, and violation of the Truth in Lending Act ("TILA"), 15

---

[5] Ukaegbu alleges that, in the claim BAC filed in his bankruptcy proceeding, BAC "purported to be filing the claim in its own behalf as the 'creditor'" and "was purporting to have been the owner and holder of Plaintiff's loan." Compl. ¶¶ 6–8. It is true that BAC provides its own name in the box labeled "Name of Creditor (the person or other entity to whom the debtor owes money or property)" on the Proof of Claim, but the Itemized Statement of Interest and/or Charges states at the top, in bold: "**Note: BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, loan servicer, for Wells Fargo Bank, N.A. as trustee for the Holders of Sasco 2007-MLN1 who is the holder of the note**." Proof of Claim 2, 4.

U.S.C. §§ 1601–1693r, for failing to notify him that Wells Fargo allegedly was the holder of the Note and Deed of Trust.

**Standing**

Ukaegbu's claim that Wells Fargo was not the holder of the Note and was not assigned the Deed of Trust forms the basis for five of his eight causes of action. Defendants do not raise the issue of whether Ukaegbu has standing to challenge Wells Fargo's status as noteholder, but "jurisdictional standing is an issue to be considered *sua sponte* by the court." *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1223 (4th Cir. 1980); *see also Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004) ("Standing is a jurisdictional issue . . . ."); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) ("[Q]uestions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court."). And, Plaintiff addresses standing in his Opposition. *See* Pl.'s Opp'n 5–9.

> Standing does not refer simply to a party's capacity to appear in court. Rather, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents. "Typically, . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims asserted.*"

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) (quoting *Allen v. Wright,* 468 U.S. 737, 752, (1984)) (emphasis in *Int'l Primate*).

Ukaegbu insists that "no transfer of possession, endorsements or any chain of assignments exists and in fact never took place," thereby challenging whether MERS could, as nominee for MLN, assigned MLN's rights to the Deed of Trust to Wells Fargo in the

Assignment of Deed of Trust.[6]  Pl.'s Opp'n 5.  But, Plaintiff is neither a party to nor a beneficiary of this contract and therefore he lacks standing to challenge it.  *See Powell v. Countrywide Bank*, No. PX 16-1201, 2016 WL 5815884, at *4 (D. Md. Oct. 4, 2016) (dismissing fraud, quiet title, declaratory relief, and other claims stemming from attempted foreclosure where "Plaintiffs . . . argue[d] throughout their Amended Complaint that the Defendants d[id] not have an interest in the property because the assignments of their Deed of Trust were not properly executed for a variety of reasons" because "Plaintiffs were not a party to the assignment from MERS to Bank of America, or from Bank of America to the Trust" and they also "were [not] an intended beneficiary of either of these assignments"); *see also Walsh v. Bank of N.Y. Mellon*, No. GJH-15-00934, 2017 WL 239367, at *4 (D. Md. Jan. 19, 2017) ("Even if Plaintiffs were the owner of the Property, they would not have standing to challenge the validity of the Assignment, as they were not parties to the contract."); *Watson v. Bank of America, N.A.*, No. PJM 14-1335, 2015 WL 1517405, at *4 (D. Md. March 30, 2015) ("Generally speaking, an obligor under a contract, including a mortgagor contract, lacks standing to challenge the assignment of the underlying obligations by the oblige to a third-party.").

Indeed, "[t]his Court has consistently held that plaintiffs lack standing to challenge the propriety of the assignment of a mortgage loan." *Powell*, 2016 WL 5815884, at *4 (citing *Henry v. Aurora Loan Servs., LLC*, No. TDC-14-1344, 2016 WL 1248672, at *3 (D. Md. Mar. 25, 2016) ("Henry's claim for a declaratory judgment that Defendants lack rights to the Deed of Trust and lack authority to foreclose necessarily fails because it is premised on the alleged invalidity of the assignments of the Deed and Note" and "Henry . . . lacks standing to challenge

---

[6] I note that the case law Plaintiff cited in support of his arguments that he has standing to challenge the assignment and that MERS no longer was MLN's nominee on the date of assignment because MLN had filed for bankruptcy is from other jurisdictions and therefore not binding on this Court.  Therefore, Plaintiff has not cited any controlling authority in that regard.

7

the validity of such assignments."); *Pruitt v. Bank of Am., N.A.*, No. TDC-15-1310, 2016 WL 337531, at *2 (D. Md. Jan. 28, 2016) ("As Pruitt acknowledged when she signed the Deed of Trust, the Note could be transferred. Such an assignment affects the rights and obligations of the parties to the transfer, not Pruitt, whose obligation to make monthly payments remains. Consequently, Pruitt lacks standing to challenge the Assignment."); *Danso v. Ocwen Loan Servicing, LLC*, No. PX 16-1396, 2016 WL 4437653, at *4 (D. Md. Aug. 23, 2016)). And, "[i]n the consumer lending context, a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Wolf v. Fed. Nat'l Mortgage Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam) (internal quotation marks omitted)). Therefore, I will not consider Plaintiff's claims insofar as he challenges whether Wells Fargo received the Deed of Trust pursuant to the Assignment of Deed of Trust because he lacks standing to assert them, and the Court lacks jurisdiction to consider them. *See id.*; *see also Int'l Primate*, 500 U.S. at 77.

### **Motion to Dismiss for Failure to State a Claim – Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Ukaegbu is proceeding *pro se*, and his Complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); however, liberal construction does not absolve Plaintiff from pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. District courts are not required to be mind readers, or to conjure questions not squarely presented to them.

*Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at * 1 (4th Cir. 1992) (per curiam) (internal citations omitted).

The Court "may consider the complaint itself and any documents that are attached to it," as well as any "document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citations and quotation marks omitted); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Additionally, I may take judicial notice of the filings in Bankruptcy Court and the Land Records Office of Prince George's County pursuant to Fed. R. Evid. 201(b)(2).

Generally, where allegations in the Complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991). Yet, "[p]laintiffs attach exhibits to their complaints for all sorts of reasons, . . . and it is not always appropriate to conclude that the plaintiff has adopted the contents of an attached document." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). For example, a plaintiff claiming libel does not adopt the contents of any allegedly libelous document he attaches. *See id.*

> Accordingly, before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it.
>
> When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper. But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true.

*Id.*

Plaintiff's fraud allegations must meet the "heightened pleading standard under Rule 9(b)." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013). Additionally, a plaintiff fails to state a claim where the allegations on the face of the complaint show that an affirmative defense, such as the statute of limitations, would bar any recovery. *Jones v. Bock*, 549 U.S. 199, 214–15 (2007) (citing Fed. R. Civ. P. 8(c)); *see Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (noting that dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense").

### Counts I and II – MCDCA and MCPA

The MCDCA bars debt collectors from "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law. § 14-202(8). "To plead a claim under the MCDCA, Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so." *Lewis v. McCabe Weisberg & Conway,* No. DKC 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014). The MCPA similarly provides that "'a person may not engage in any unfair or deceptive trade practice,'" such as making a "false or misleading statement[]," in relation to "'[t]he extension of consumer credit' or the 'collection of consumer debts.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013) (quoting Com. Law § 13-303). Further, it provides for a private action pursuant to Com. Law § 13-408. To state a claim under the MCPA, a plaintiff "must allege (1) an unfair or deceptive trade practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md. 2014) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012)).

Ukaegbu claims in Counts I and II that Defendants violated the MCDCA and MCPA by attempting to collect on the Note when "Wells Fargo was never in possession of the original Note, never received a proper and legal assignment/transfer of Plaintiff's Deed of Trust, and did not have nor could prove a complete chain of endorsements/transfers or possession of Plaintiff's Note to SASCO." Compl. ¶¶ 39–41, 48. But, as noted, Plaintiff lacks standing to challenge the Assignment of Deed of Trust.

Moreover, this Court has concluded that MERS had the authority to assign a deed of trust under similar circumstances in *Pruitt*, 2016 WL 337531. There, Pruitt obtained a mortgage loan

11

for her residential property from American Home Mortgage in 2006. *Id.* at *1. The deed of trust that secured her promissory note "name[d] American Home Mortgage as the lender and Mortgage Electronic Registration Systems, Inc. ('MERS') as the nominee for the lender and as the beneficiary"; both documents "state[d] that the Note [could] be transferred." *Id.*

> In August 2007, American Home Mortgage went out of business. Over four years later, on February 13, 2012, an employee of Bank of America, Beverly Brook, executed an assignment of the Deed of Trust (the "Assignment") transferring the Deed of Trust "together with the note(s) and obligations therein described" from MERS to the Bank of New York Mellon.

*Id.* In addition to noting that "Pruitt lack[ed] standing to challenge the validity of the transactions that transferred to Defendants the rights to enforce the Note and the Deed of Trust," the Court concluded that "MERS did have authority to assign the Deed of Trust." *Id.* at *2. It reasoned that "[t]he Deed of Trust name[d] MERS and 'the successors and assigns of MERS' as the beneficiaries and nominees of the lender, American Home Mortgage," and "thus expressly grant[ed] MERS the right to assign the Deed of Trust." *Id.*

As for the blank indorsement, "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Md. Code Ann., Com. Law § 3-205(b); *see also Deutsche Bank Nat'l Trust Co. v. Brock*, 63 A.3d 40, 49 (Md. 2013) ("[T]he person in possession of a note . . . indorsed in blank, is a holder entitled generally to enforce that note."). When a borrower defaults on a mortgage, the "holder in possession of [a] Note that contain[s] a blank endorsement, either . . . the servicing agent or any of the substitute trustees [is] empowered to enforce the Note." *Okoro v. Wells Fargo Bank, N.A.*, No. PX 16-0616, 2016 WL 5870031, at *8 (D. Md. Oct. 6, 2016) (quoting *Andrews v. Brown*, 2016 WL 3017692, at *5 (Md. Ct. Spec. App. May 26, 2016), and concluding that claims that defendant "wrongfully" accelerated the Note without an assignment of the deed of trust when the

note had been indorsed in blank "fail as a matter of law and must be dismissed"), *aff'd,* No. 16-2274, 2017 WL 1291278 (4th Cir. Apr. 7, 2017). BAC, which was the servicer of the loan at the time, had possession of the Note, disclosed that Wells Fargo was the holder of the Note, and attached a True and Certified Copy of it to its Proof of Claim in Ukaegbu's bankruptcy proceeding. Proof of Claim & Note, ECF No. 1-3, at 2, 4, 25–28; *see also* Appt. of Sub. Trs. 1 (referring to Wells Fargo as the holder of the Note). Therefore, Wells Fargo was the holder of the Note, and Wells Fargo and SPS, as Wells Fargo's later servicer of the loan, were entitled to enforce the Note. *See Okoro*, 2016 WL 5870031, at *8; Com. Law § 3-205(b).

Ukaegbu relies on *Anderson v. Burson*, 35 A.3d 452 (Md. 2011), to argue that possession of a blank indorsement is not sufficient to enforce a note. Pl.'s Opp'n 9. But, *Anderson* is inapposite because it discusses the enforcement of a note by a "*nonholder* in possession," not the holder. *See Anderson*, 35 A.3d at 461. "'[T]he holder of the instrument'" is another category of "person entitled to enforce a negotiable instrument." *Id.* (quoting Com. Law § 3-301).

Ukaegbu asserts that he "has not attached the[se] documents [to his Complaint] for their truth or authenticity" but rather "to demonstrate how they collectively contradict Wells Fargo's claim to be the owner and holder of the Note . . . ." Pl.'s Opp'n 1. Notably, he does not dispute their authenticity or contents; he contends that the documents are inconsistent, do not convey the rights they purport to convey, and are insufficient to establish Wells Fargo as the holder of his Note. *See id.* at 2. But, insofar as the documents' contents conflict with his descriptions of them, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991). And, I take judicial notice of the filings in Bankruptcy Court and the Land Records Office of Prince George's County pursuant to Fed. R. Evid. 201(b)(2). Consequently, based on the pleadings, including the attached exhibits, Wells Fargo *is* the holder and *was*

assigned the Deed of Trust. Therefore, Plaintiff cannot establish "that Defendants did not possess the right to collect the amount of debt sought" to state a claim under the MCDCA. *See Lewis*, 2014 WL 3845833, at *6. Nor can he show that Defendants' representation that they had the right to enforce the Note was a misrepresentation for purposes of the MCPA. *See Bey*, 997 F. Supp. 2d at 319. Both claims must be dismissed.

### Count III - FDCPA

The FDCPA "protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (quotation omitted)). To state a claim for relief under the FDCPA, Plaintiff must allege that "(1) [he] has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Id.* at 759–60 (citation omitted); *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (citing 15 U.S.C. § 1692). The FDCPA prohibits debt collectors from, *inter alia*, "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest," *id.* § 1692f(6)(A). Plaintiff claims in Count III that SPS violated these FDCPA provisions "[b]y sending Plaintiff [a] September 1, 2016, letter falsely representing that Wells Fargo was the holder and/or owner of Plaintiff's Note and demanding payment and threatening to enforce a security interest if the debt was not paid." Compl. ¶ 52. As discussed, Wells Fargo was the

14

holder of his Note, and therefore such a representation by SPS was not false. Consequently, Ukaegbu fails to state a claim for a violation of § 1692e or § 1692f(6)(A) because SPS's representation on its September 1, 2016 letter was not "false, deceptive, or misleading," and there was a "present right to possession of the property claims as collateral through an enforceable security instrument," namely, the Deed of Trust. See 15 U.S.C. §§ 1692e, 1692f(6)(A). This claim, also, must be dismissed. *See Stewart*, 859 F. Supp. 2d at 759–60.

### Declaratory Judgment

> The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." The purpose of issuing such a judgment is to clarify and settle the legal relations between the parties, and a declaratory judgment should be issued when "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). Federal courts issue declaratory judgments only in cases that (i) meet the constitutional "case or controversy" requirement and also (ii) present a valid basis for subject matter jurisdiction. *See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 1001 (D. Md. 1985). Generally, the presence of a case or controversy depends on "whether the facts alleged... show...a controversy...of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). And even where a request for a declaratory judgment meets both of these requirements, the district court, in its discretion, must be satisfied that declaratory relief is appropriate. *See White v. National Union Fire Ins. Co.*, 913 F.2d 165, 168 (4th Cir. 1990) (citing *A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331 (1961)); *Glenmont Hill Associates v. Montgomery Cty., MD*, 291 F.Supp.2d 394, 397 (D. Md. 2003) ("[W]hile a federal court is authorized to issue a declaratory judgment, it is not obligated to do so.").

*Pruitt v. Wells Fargo Bank, N.A.*, No. DKC 15-1308, 2015 WL 9490234, at *7 (D. Md. Dec. 30, 2015).

In *Pruitt*, the plaintiff sought "a declaration 'that Wells Fargo [was] not a "holder" of the Note and [was] without right to enforce the Note,'" based on the plaintiff's assertion that "Wells Fargo [was] still not in possession of the Note." *Id.* The Court denied the relief, concluding that there was "no current case or controversy before the court," given that "Defendants attach[ed]

the Deed of Trust, the Note, and the Assignment to their unopposed motion to dismiss, and Plaintiff allege[d] no facts whatsoever casting doubt on Defendants' status as assignee of the relevant documentation." *Id.* at *8. Consequently, the Court concluded that Pruitt "fail[ed] to set forth plausible facts showing her entitlement to declaratory relief." *Id*.

Here, similarly, Plaintiff seeks a declaratory judgment that "Wells Fargo as trustee for the SASCO Trust or in its own behalf, has no legal or equitable interests in Plaintiff's Note, Deed of Trust or property" and "no right to enforce Plaintiff's Note or to enforce a claimed security interest in the subject property." Compl. 24. But, as discussed, the documents attached to the Complaint, including the Deed of Trust, Note with blank indorsement, and Assignment of Deed of Trust, show that Wells Fargo is the holder of the Note and was assigned the Deed of Trust and prevail over Ukaegbu's contrary assertions. Therefore, I will decline to enter the declaratory judgment. *See Pruitt*, 2015 WL 9490234, at *7–8.

**Quiet Title**

Ukaegbu also seeks to quiet title to the Property, claiming that "the subject Note has been permanently lost and/or destroyed while in the possession of the original lender in order to hide the existence of underwriting fraud and [a] fraudulent appraisal," and as a result, without "a complete chain of ownership and possession of the original not[e], Defendants do not have any legal or valid claim to any security interests or any other interests in Plaintiff's property." Second Am. Compl. ¶¶ 65, 67; *see also* Am. Compl. "To prevail on a claim to quiet title, Plaintiff must show by clear proof that Defendants lack a right to enforce the Deed of Trust." *Roberson v. Ginnie Mae REMIC Trust 2010 H01*, 973 F. Supp. 2d 585, 589–90 (D. Md. 2013); *see also, e.g.*, *Porter v. Schaffer,* 728 A.2d 755, 766–67 (Md. Ct. Spec. App. 1999); *Kasdon v.*

16

*G.W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 995 (D. Md. 1982), *aff'd sub nom. Kasdon v. United States,* 707 F.2d 820 (4th Cir. 1983).

As previously stated, the Note is attached to the Complaint.[7] Moreover, as discussed, Defendants have the right to enforce the Deed of Trust, and therefore Plaintiff cannot make the necessary showing to prevail on his quiet title claim. *See Roberson*, 973 F. Supp. 2d at 589–90. Consequently, his quiet title claim fails and must be dismissed. *See id.*

## **Counts IV, V and VI – TILA, Fraudulent Concealment and Negligence**

Ukaegbu claims that Wells Fargo violated TILA by failing to give Plaintiff "any notice at all concerning Wells Fargo's ownership (let alone a notice containing the [statutorily] required information)." Compl. ¶ 54. Similarly, he claims Wells Fargo is liable for fraudulent concealment for "deliberately conceal[ing] the transfer [of Plaintiff's Note] for several years" and "caus[ing] and allow[ing] Plaintiff to believe that other entities owned the loan to avoid its own liability for a predatory loan and to thwart an action for rescission until after all statutes of limitations had expired." *Id.* ¶ 59. And in Count V, which is labeled as "Negligence Against Both Defendants," Ukaegbu claims that Wells Fargo breached the duties that "TILA regulations

---

[7] Even if the Note has been lost, in Maryland, a party need not have possession of a note to enforce it. *See* Md. Code Ann., Com. Law § 3-309(a) ("A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."). Rather, the party can provide "a lost note affidavit . . . to establish [the] party's right to enforce a note even without possession of the original instrument," and "Maryland Courts routinely accept lost note affidavits to establish a party's right to enforce a promissory note." *Bird v. Specialized Loan Servicing LLC*, No. RDB-16-3743, 2017 WL 1001257, at *3 (D. Md. Mar. 15, 2017) (citing *Anderson v. Burson*, 35 A.3d 452, 455 n.6 (Md. 2011)).

impose . . . upon creditors . . . . in failing to give notice as required by TILA as alleged in [Count IV]." *Id.* ¶ 56.

Defendants contend that Plaintiff's TILA claim is time-barred by the one year statute of limitations applicable to these claims, and his fraudulent concealment and negligence claims are barred by Maryland's three-year statute of limitations for these common law claims. Defs.' Mem. 8, 9. It is true that Maryland's three-year statute of limitations applies to these common law claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. And, 15 U.S.C. § 1640(e) provides that, with exceptions not relevant here, "any action under [TILA] may be brought in any United States district court . . . within one year from the date of the occurrence of the violation." "This Court may suspend the statute of limitations for TILA violations 'until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment.'" *Atkinson v. BAC Home Loans Servicing, LP*, No. RDB 10-159, 2010 WL 4137558, at *3 (D. Md. Oct. 21, 2010) (quoting *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 663 (4th Cir. 2009) (citation omitted)).

As Defendants see it, Plaintiff reasonably should have known that Wells Fargo had the right to enforce the Note as of January 20, 2011, when BAC filed its Proof of Claim in Bankruptcy Court. Defs.' Mem. 9. Ukaegbu counters:

> It appears that Defendants are taking the position that Plaintiff had no right to rely on the BAC representation (made under penalty of perjury) that BAC was the entity that Plaintiff owed. They also appear to be suggesting that despite the fact that BAC engaged in an adversary proceeding against Plaintiff during that bankruptcy proceeding, continuing to present itself as Plaintiffs secured creditor, Plaintiff should have known or have been able to discover that Wells Fargo was the true entity that Plaintiff owed and who owned his Note.

Pl.'s Opp'n 22. Yet, as noted, BAC did not hold itself out as the creditor in its Proof of Claim. Rather, after checking the box as the creditor on the Proof of Claim, it clarified in unmistakably

bold letters at the top of its Itemized Statement of Interest and/or Charges: "**Note: BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, loan servicer, for Wells Fargo Bank, N.A. as trustee for the Holders of Sasco 2007-MLN1 who is the holder of the note**." Proof of Claim 2, 4. And, for its Proof of Claim, BAC produced two True and Certified Copies of the Note indorsed in blank. Thus, as of January 20, 2011, Plaintiff reasonably should have known that Wells Fargo had the right to enforce the Note.

Even without the Proof of Claim, the Assignment of Deed of Trust to Wells Fargo was filed in the Land Records on February 20, 2013. *See Okoro v. Wells Fargo Bank, N.A.*, No. PX 16-0616, 2016 WL 5870031, at *7 (D. Md. Oct. 6, 2016) (stating that "the status of the blank Note was neither unknowable, nor undiscoverable, during the limitations period" when "[t]he Note is simply the Plaintiffs' underlying loan which Plaintiffs could have obtained from public land records at any time"). Based on this filing, the TILA statute of limitations would have run by February 20, 2014 and the applicable Maryland statute of limitations by February 20, 2016, still well before Plaintiff filed suit on October 12, 2016. Accordingly, the statutes of limitations ran before he filed suit, and his TILA, fraudulent concealment, and negligence claims must be dismissed. *See* 15 U.S.C. § 1640(e); *Atkinson*, 2010 WL 4137558, at *3; Cts. & Jud. Proc. § 5-101.

## Conclusion

In sum, Ukaegbu fails to state a claim under the MCDCA, MCPA, or the FDCPA (Counts I, II, and III), or for a declaratory judgment or quiet title. Additionally, Ukaegbu's TILA, fraudulent concealment, and negligence claims (Counts IV, V, and VI) are time-barred and subject to dismissal. Accordingly, I will dismiss his Complaint in its entirety. Because Ukaegbu cannot amend his pleadings further to avoid the statute of limitations or contradict the

documents that show Wells Fargo had the right to enforce the Note, dismissal will be with prejudice.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) ("When a plaintiff fails to state a claim, he 'should generally be given a chance to amend the complaint ... before the action is dismissed with prejudice."[] But, dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim. *See, e.g., Cozzarelli v. Inspire Pharm., Inc.,* 549 F.3d 618, 630 (4th Cir. 2008)."). A separate order will issue.[8]


Dated: <u>July 7, 2017</u>                                                    /S/                   
                                                                                        Paul W. Grimm
                                                                                        United States District Judge

lyb

---

[8] The parties are advised that any filings made in this case following the issuance of this Memorandum Opinion and accompanying Order are subject to the pre-motion submission order, ECF No. 2.  Failure to comply with this order will result in the striking of the non-compliant filing.  Any filing that complies with the order and is otherwise timely filed will be deemed a timely filing of any motion subsequently permitted by the Court.